UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 0:20-cv-60658-WPD

KIP BARNETT,
individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

FITNESS INTERNATIONAL, LLC
d/b/a LA FITNESS,

      Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

      Plaintiffs Kip Barnett and Samuel Enzinna respond in opposition to Defendant Fitness International, LLC's Motion to Dismiss First Amended Class Action Complaint, and state:

**I.    INTRODUCTION**

      On March 15, 2020, Defendant collected millions of dollars in fees from its members. It did so knowing that it was going to voluntarily close it facilities the next day. When it learned that Plaintiff Barnett had retained counsel and intended to do something about Defendant's unlawful collection of fees, Defendant attempted to pick-off class members by sending an e-mail blast at 1:28 a.m., while continuing to represent to Plaintiffs' counsel that it was "reviewing" Plaintiff Barnett's pre-suit class-wide demand. Next, Defendant tried to pick-off Plaintiff Enzinna by unilaterally depositing a refund into his bank account upon learning that Enzinna would be joining this case. Plaintiff Enzinna rejected that offer and, as discussed below, he has standing to maintain this action.

      Defendant's lack of regard for the rights of its members is the theme of its Motion to Dismiss. Defendant essentially contends that, under the terms of its Membership Agreements, it can do whatever it wants, and all Plaintiffs and the class members can do is cancel their agreements. Fortunately for Plaintiffs and the class members, the operative First Amended Complaint adequately alleges claims for breach of contract, unjust enrichment, negligence, negligent misrepresentation, and breach of the

1

implied covenant of good faith and fair dealing, all stemming from Defendant's unlawful conduct. Defendant's Motion to Dismiss should therefore be denied.

## II. FACTS

Defendant is the largest fitness facility owner/operator in the country. First Amd. Compl., [ECF No. 12], at ¶1. Plaintiffs are members of Defendant's fitness facilities and entered into Membership Agreements with Defendant. *Id*. at ¶¶19-21. Defendant collects dues in advance from its members on the 1st or 15th of each month. *Id*. at ¶24. Pursuant to its collection schedule, Defendant debited membership fees from Plaintiffs' bank accounts on March 15, 2020 for the billing period of March 15, 2020 through April 15, 2020. *Id*. at ¶¶25-26. It did so knowing that it had no intention of providing services to Plaintiffs in exchange for the fees collected. *Id*. at ¶28.

On March 16, 2020, the day after Defendant collected millions of dollars from its members, Defendant voluntarily closed its fitness facilities in the U.S., including the locations where Plaintiffs regularly exercise. *Id*. at ¶27. "Defendant's facilities did not become unavailable. Rather, Defendant made the unilateral decision to close its facilities." *Id*. Instead of reimbursing Plaintiffs and the class members the fees that it should have never collected, Defendant notified Plaintiffs and the class members that it would be suspending all billing, but not until April 1, 2020. *Id*. at ¶30. Consumer complaints regarding Defendant's conduct, and the inadequate remedies offered by Defendant, can be found throughout the Internet:

- On March 16, 2020, LA Fitness sent out an email stating that all gyms nationwide would be closing until (at least) April 1st to try and staunch the spread of COVID-19. However, I was still charged for the entire month of March's tuition even though I haven't and won't be able to use the gym for over half the month. I called the LA Fitness corporate number and was told that in lieu of a refund for half of March's tuition, I would be rewarded with an extended "end by" date. Meaning that whenever the gym opens, if i chose to end my membership, my last day to use the facilities will be the same amount of time the gym was closed. Of course, I pointed out that that didn't cover the people who chose to stay with LA Fitness, and there was no answer for that.

- La fitness closed due to coronavirus yesterday. I can't use the facility. It is closed. Therefore it is ridiculous that I've been assessed a membership fee today for the next 30 days. What am I paying for? I should not have been charged!

- Due to the COVID-19 We wanted to put our account on hold which we did however they still charged our account the full amount when we

> asked for that refund they said there is nothing they can do. I asked to speak to a manger which they refused to transfer me letting them know due to the virus we do not feel comfortable to go to the gym but they still refused to help and stated the virus has nothing to do with our membership
>
> - I'm a pay by month member, and I just see a charge this morning. Should the monthly charges be stopped? Please let us know what to do!
>
> - Memberships being extended means nothing to pay by month members. Like….said, it should be prorated or not charged at all!
>
> - It should be prorated…or not charge at all
>
> - You guys better refund my membership for march or I will be contacting the better business bureau point blank.
>
> - Are you paying staff with my automatic debit? I hope so cuz if not you shouldn't be charging me.
>
> - Yet still taking out dues for people when the gym isnt even open to use
>
> - So, you close the facility but you are still charging us to use the closed facility! What gives! You should NOT be CHARGING us until you re-open! I want my money back!

*Id*. at ¶38.

On April 22, 2020, Plaintiff Enzinna, through counsel, notified Defendant that he would be joining this lawsuit. *Id*. at ¶9. In response, Defendant attempted to unilaterally deposit a "refund" into Plaintiff Enzinna's bank account, which Plaintiff Enzinna immediately rejected, in part because Defendant's offer failed to account for and provide the class-wide relief sought by Plaintiffs. *Id*. at ¶10. Defendant continues to refuse to reimburse Plaintiffs and the class members the fees it should have never collected on March 15, 2020, which caused Plaintiffs and the class members harm. *Id*. at ¶¶36-37. Additionally, Defendant has not agreed to any other relief sought by Plaintiffs in their operative pleading, and has not agreed to admit liability for Plaintiffs' and the class members' claims.

### III.   LEGAL STANDARD

#### A.   Standard Under Rule 12(b)(1)

As the Eleventh Circuit explained in *Lawrence v. Dunbar*, Rule 12(b)(1) challenges to subject matter jurisdiction can be either "facial" or "factual":

> Facial attacks on the complaint require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

919 F.2d 1525, 1528-29 (11th Cir. 1990).  Facial and factual attacks are subject to different standards.  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true."  *Id*. at 1529.

Here, Defendant's challenge is a facial one as it does not attempt to introduce extrinsic evidence and relies solely on the allegations of the operative pleading.  *See Edelsberg v. Brea Fin. Grp., Ltd. Liab. Co.*, No. 18-CV-62119-DIMITROULEAS/S, 2019 U.S. Dist. LEXIS 29941, at *4 (S.D. Fla. Feb. 26, 2019) (holding that challenge was factual because "Defendant bases its challenge on the Offer, which Plaintiff never mentions in his complaint.").

#### B.   Standard Under Rule 12(b)(6)

"A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case."  *Spector v. Generac Power Sys., Inc.*, No. 10-14182-CIV-MOORE/SIMONTON, 2010 WL 11444279, at *1 (S.D. Fla. Oct. 5, 2010).  "When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true."  *Prisua Eng'g Corp. v. Samsung Elecs. Co., Ltd.*, No. 1:16-cv-21761-KMM, 2017 WL 1041571, at *3 (S.D. Fla. Mar. 9, 2017).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.*  "This standard demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" and a court "must look to the standards set out by the substantive law at issue."  *Id.*  Accordingly, a court may dismiss a complaint only "when, on the basis of a dispositive issue of law, no

4

construction of the factual allegations will support the cause of action." *Id.* Defendant has not met the burden required to succeed on a Rule 12(b)(6) motion.

### IV.  ARGUMENT

#### A. Plaintiff Enzinna has Standing and Defendant Should not be Permitted to Thwart the Class Action Mechanism.

There is no authority supporting Defendant's attempted pick-off strategy as evidenced by Defendant's failure to cite a single case dismissing a plaintiff's lawsuit where, as occurred here, a pre-suit offer of settlement was rejected. Instead, Defendant generally cites case law discussing when cases are mooted, and then attempts to make the leap to argue that Plaintiff's claims are moot. Plaintiff, conversely, has support for his position that his claims have not been mooted, namely, the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Since it cannot avoid a Supreme Court case that is directly on point, Defendant simply ignores the case and makes no effort to explain why the reasoning and holding of that case are not applicable.

As the Supreme Court made clear in *Campbell-Ewald*, "basic principles of contract law" dictate that a settlement offer, "once rejected, ha[s] no continuing efficacy." 136 S. Ct. at 670 (citing *Genesis HealthCare Corp.* v. *Symczyk*, 185 L. Ed. 2d 636, 644 (2013) (Kagan, J., dissenting)). Additionally, where a settlement offer is not only rejected, but the defendant continues to deny liability, "the parties remain[] adverse; both retain[ing] the same stake in the litigation they had at the outset." *Campbell-Ewald*, 136 S. Ct. at 670-71. Beyond the fact that Plaintiff still has a stake in this litigation by virtue of rejecting Defendant's offer, as well as Defendant's continued denial of liability, Plaintiff must be given a fair opportunity to move for class certification. Indeed, "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Id*. at 672.

Since *Campbell-Ewald*, the Second, Seventh, and Ninth Circuits have addressed and rejected Defendant's attempted strategy here. For example, in *Fulton Dental, LLC v. Bisco, Inc.*, the plaintiff filed a putative class action and before the plaintiff could move for class certification, the defendant moved under Rule 67 to deposit $3,600 with the district court, which the plaintiff rejected. 860 F.3d 541, 543 (7th Cir. 2017). The defendant then argued that the plaintiff's claims had been mooted and the district court no longer possessed jurisdiction over the case. *Id*. The district court agreed. *Id*. On appeal, the Seventh Circuit reversed, holding that the rejected offer did not render the case moot because "all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted

offer is not binding on the offeree." *Id.* at 545; *see also Conrad v. Boiron, Inc.*, 869 F.3d 536, 541 (7th Cir. 2017) ("[defendant] would like us to hold that at some point, a plaintiff's stubborn refusal to accept a generous settlement offer should be taken as the legal equivalent of acceptance. But we are aware of no such doctrine, and we are loathe to adopt such an ill-defined rule. The Supreme Court has never endorsed anything like this."). Further, the Seventh Circuit held that the plaintiff's putative class action "is about more than the statutory damages to which [the plaintiff] believes [he] is entitled; it is also about the additional reward that [he] hopes to earn by serving as the lead plaintiff for a class action. Nothing forces [him] to accept [the defendant's] valuation of the latter part of the case." *Id.*

Similarly, in *Chen v. Allstate Ins. Co.*, before the plaintiff could move for class certification, the defendant deposited funds in an escrow account, and offered to permit the entry of a judgment and injunctive relief against it, while continuing to deny liability. 819 F.3d 1136, 1139-40 (9th Cir. 2016). The plaintiff did not accept the offer, but the defendant nevertheless attempted to dismiss the action, claiming that the district court lacked jurisdiction. *Id.* at 1140. The district court denied the defendant's motion, but certified the order for interlocutory appeal. *Id*. While the appeal was pending, the Supreme Court decided *Campbell-Ewald*. Following the Supreme Court's decision, the Ninth Circuit affirmed the lower court, holding:

> [W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.

*Id.* at 1147. Most recently, in *Geismann v. ZocDoc, Inc.*, the Second Circuit rejected a pick-off attempt, stating that condoning such a strategy would "risk placing the defendant in control of a putative class action, effectively allowing the use of tactical procedural maneuvers to thwart class litigation at will." 909 F.3d 534 (2d Cir. 2018) (citing *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 341 (1980) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions[.]"))

In addition to *Fulton Dental, Chen*, and *Geismann,* every district court to have addressed the issue since *Campbell-Ewald* has rejected a defendant's attempt to moot a putative class action through an unaccepted offer of settlement. For example, in *Eisenband v. Credit Pros Int'l Corp.*, Judge Beth

6

Bloom held that, even where a defendant in a class case attempts to deposit the full amount of plaintiff's individual claim, dismissal of the case is not warranted. No. 18-cv-60053-BB, 2018 U.S. Dist. LEXIS 61725, at *4 (S.D. Fla. Apr. 10, 2018); *see also Susinno v. Work Out World, Inc.*, Civil Action No. 15-cv-5881 (PGS), 2017 U.S. Dist. LEXIS 194930 (D.N.J. Nov. 28, 2017) (denying defendant's motion to dismiss filed after a Rule 67 offer); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 167 F. Supp. 3d 582, 584 (S.D.N.Y. 2016) ("With a live claim remaining, this Court is bound by *Campbell-Ewald* to afford Plaintiff a fair opportunity to show that class certification is warranted."); *Bais Yaakov of Spring Valley v. Varitronics*, LLC, No. 14-CV-5008 (ADM/FLN), 2016 U.S. Dist. LEXIS 28974, 2016 WL 806703, at *1 (D. Minn. Mar. 1, 2016) (denying motion for Rule 67 deposit in advance of class certification stage); *Brady*, 312 F.R.D. at 306 (same); *Jarzyna v. Home Props., L.P.*, 201 F. Supp. 3d 650, 655-56 (E.D. Pa. 2016) (disallowing a deposit of damages for a named plaintiff in an attempt to moot a class action); *Browning Ferris, Inc. v. Montgomery Cty*., 1990 U.S. Dist. LEXIS 11800, at *6-7 (E.D. Pa. Sept. 4, 1990) (Rule 67's procedures "cannot be used in such a manner to effectively set-off an undisputed liability against a disputed liability" and thus "alter the contractual relationship" *between* the parties.); *accord Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986).

Moreover, as held by this Court, it makes no difference "that [defendant's] offer preceded [plaintiff's] lawsuit. *Campbell-Ewald*'s core lesson is that unaccepted contract offers are nullities; settlement proposals are contract offers; and therefore unaccepted settlement proposals are nullities. Nothing about that logic turns on whether a suit has been filed." *Edelsberg*, 2019 U.S. Dist. LEXIS 29941 at *6 (quoting *Laurens v. Volvo Cars of North America, LLC*, 868 F.3d 622, 627 (7th Cir. 2017)). Nor does Defendant's "refund" label make any difference.

Indeed, the Seventh Circuit's decision in *Laurens*, which this Court found to be "highly persuasive" in *Edelsberg*, makes that point clear. 2019 U.S. Dist. LEXIS 29941 at *5. In *Laurens*, the defendant offered the plaintiff a "full refund" prior to the plaintiff's filing of the lawsuit, which the plaintiff rejected. 868 F.3d at 624. The defendant then argued, like Defendant here, that the refund mooted the plaintiff's claim and the plaintiff lacked standing. *Id*. On appeal, the Seventh Circuit rejected that position, holding as follows:

> Khadija considered the trade and found it wanting. Whether she did
> so because of the cost of the charging station, or because she wanted
> additional damages for Volvo's betrayal, or she wanted to be

>  reimbursed for the nuisance of a short-range electric car, **or she wanted a bonus for serving as a class representative**, is beside the point. **Volvo has no right preemptively to force her to accept a contract offer**. Indeed, an offeror is almost never permitted to *force* acceptance on an unwilling offeree. ALI Restatement (Second) of Contracts §§ 17, 50-70, 159-77; *see also Campbell-Ewald*, 136 S. Ct. at 672 ("In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case.")….Volvo's position is also at odds with the traditional rule that "a mere offer" does not strip the court of jurisdiction. *Campbell-Ewald*, 136 S. Ct. at 675 (Thomas, J., concurring). **Plaintiffs may opt for trial in the face of offers far more concrete than Volvo's letter; they could even reject "tender," which was "an offer to pay the entire claim before a suit was filed, accompanied by 'actually produc[ing]' the sum 'at the time of tender' in an 'unconditional' manner."** *Id.* at 675 (quoting M. BACON, A NEW ABRIDGMENT OF THE LAW, 314-15, 321 [**16] (1856)).

*Id.* at pg. 627 (bolded/underline emphasis supplied; italicized emphasis original).

Here, just like in *Laurens*, Defendant has no right to tender and force a refund upon Plaintiff. Once Plaintiff rejected Defendant's refund, no contract was formed, and Plaintiff's claim remains live. Additionally, Defendant continues to deny liability, and the parties therefore remain adverse and a controversy exists. Also, Plaintiff has not yet filed his motion for class certification, and pursuant to *Campbell-Ewald*, Plaintiff "must be accorded a fair opportunity to show that certification is warranted." *Id.* at 672. Lastly, Defendant's offer fails to account for the additional reward Plaintiff hopes to earn by serving as the lead plaintiff, as well as the injunctive and class-wide relief, attorney's fees, and costs sought by Plaintiff. Thus, Defendant "has not afforded plaintiff 'complete relief,' and plaintiff's claims are therefore not moot." *Luman v. NAC Mktg. Co., LLC*, No. 2:13-cv-00656-KJM-AC, 2017 U.S. Dist. LEXIS 125498 (E.D. Cal. Aug. 8, 2017) ("NAC has refunded the money Amkraut paid for the SBP product, including shipping charges….It has not agreed to the injunctive relief Amkraut requests, paid his attorneys' fees, or reimbursed his litigation related costs.") (quoting *Chen*, 819 F.3d at 1146).

In addition to *Laurens*, ample authority exists supporting Plaintiff's position that an unaccepted refund – even if directly deposited – does not moot a claim. *See, e.g., Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("Here, the refunds issued by LLR were automatically credited to Porsch -- she was not given the option to accept or reject them. **The same principles underlying *Campbell-Ewald* and *Laurens* counsel against allowing the defendants to deprive potential plaintiffs of standing by simply crediting their accounts prior to suit**.") (emphasis supplied); *In re Big Heart Pet*

8

*Brands Litig.*, No. 18-cv-00861-JSW, 2019 U.S. Dist. LEXIS 229340 (N.D. Cal. Oct. 4, 2019) ("Here, Plaintiffs do not allege they accepted a refund from Defendant, and Defendant does not put forth any evidence that shows they have done so."); *Main v. Gateway Genomics, LLC*, No. 15cv2945 AJB (WVG), 2016 U.S. Dist. LEXIS 183034, at *15 (S.D. Cal. Aug. 1, 2016) ("*Campbell-Ewald* governs the Court's analysis of whether Ms. Azar's claims for restitution are moot. Even if Defendant offered to full refund Ms. Azar for her purchase of the SneakPeek test prior to when the first amended complaint was filed, that does not moot her claims.") (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. at 670-71; *Chen*, 819 F.3d at 1144; *O'Neal v. Am.'s Best Tire LLC*, No. CV-16-00056, 2016 U.S. Dist. LEXIS 72064, 2016 WL 3087296, at *3 (D. Ariz. June 2, 2016) ("Plaintiffs have not accepted the checks tendered by Defendants. As a result, the parties remain adverse and retain the same stake in the litigation they had at the outset.").

In the face of this overwhelming authority, Defendant cites a handful of cases, all of which either support Plaintiff's position or are distinguishable.  For example, in *Luman v. Theismann*, the issue before the Ninth Circuit was "whether the district court erred in holding that [plaintiff's] claim became moot when [defendant] issued him a refund." 647 F. App'x 804, 807 (9th Cir. 2016).  While the appeal was pending, the Supreme Court issued *Campbell-Ewald*, and based on that decision, the Ninth Circuit vacated and remanded the case for the district court to reconsider based on the holding in *Campbell-Ewald*. *Id*. at 807.  On remand, the district court held that the plaintiff did have standing because the defendant's refund did not account for the injunctive relief, attorney's fees, and costs sought by the plaintiff. *Luman*, 2017 U.S. Dist. LEXIS 125498 at *8.

In *Hamilton v. Gen. Mills, Inc.*, another case cited by Defendant, the defendant "working in conjunction with the United States Food and Drug Administration ('FDA'), issued a widely-advertised voluntary recall and refund program for the cereals produced on those dates." No. 6:16-cv-382-MC, 2016 U.S. Dist. LEXIS 97812, at *2 (D. Or. July 27, 2016).  In other words, it afforded the class-wide relief sought by the plaintiff and the plaintiff's claims therefore became moot.  Similarly, in *Hardy v. Bed Bath & Beyond, Inc.*, the defendant had in place a refund program that provided relief to the entire class. *See* 17-22315-Civ, 2018 U.S. Dist. LEXIS 38948, at *3 (S.D. Fla. Mar. 9, 2018).  Here, Defendant refuses to issue a class-wide reimbursement of the fees it should have never collected, which is precisely why Plaintiffs were forced to file suit.  Thus, the cases cited by Defendant are inapplicable because Defendant continues to refuse to provide the class-wide relief sought by Plaintiffs.

9

In sum, Defendant's attempt to deprive Plaintiffs and class members of their day in court should not be permitted. Defendant's offer has been rejected by Plaintiff and, given Defendant's continued refusal to accept liability, the parties have the same stake in the litigation they had at the outset. Further, Defendant's offer does not provide Plaintiff with the full relief sought on behalf of himself and the class members. Most importantly, Supreme Court precedent mandates that Plaintiff be given an opportunity to move for class certification.

### B. **Plaintiffs Have Sufficiently Alleged a Claim for Breach of Contract**.

According to Defendant, Plaintiffs fail to identify the "specific provision" of the contract that Defendant breached. Mot. at pg. 11. Defendant is mistaken with respect to Plaintiffs' allegations and the law. As recently held by the Eleventh Circuit, allegations regarding "**general** or specific provisions" of a contract that were breached are sufficient for purposes of stating a cause for breach of contract. *See Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1329 (11th Cir. 2020) (emphasis supplied); *see also Roman v. Spirit Airlines, Inc.*, No. 19-CIV-61461-RAR, 2019 U.S. Dist. LEXIS 182638, at *8 (S.D. Fla. Oct. 20, 2019) ("While Plaintiffs concede that they have not cited to a specific contractual provision that was breached, Plaintiffs need not do so to satisfy Rule 8(a) of the Federal Rules of Civil Procedure as interpreted by *Iqbal* and *Twombly*.") (citations omitted).

Consistent with the above Eleventh Circuit precedent, when performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *See* Restatement (Second) of Contracts § 235(2)); 13 Williston on Contracts § 63.3 (4th ed. 2003); *Al-Ghena Int'l Corp. v. Radwan*, No. 13-61557-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 199129, at *22 (S.D. Fla. Apr. 14, 2014) ("Plaintiffs allege that they entered into the Al-Ghena and Shairco Purchase Agreements; that those agreements imposed obligations for Cortez Holding to oversee and manage construction of a proposed hotel, as well as to provide Plaintiffs with ownership rights over CPD; that Cortez Holding has failed to provide the requisite oversight and management….These allegations, if true, establish the requisite elements for a breach of contract claim."); *Wevercomm Co. v. Fiplex Communs., Inc.*, No. 18-21378-CIV, 2019 U.S. Dist. LEXIS 84491, at *6 (S.D. Fla. Feb. 25, 2019) ("Accordingly, accepting the allegations in Plaintiff's Complaint as true, the Court finds that Plaintiff has sufficiently alleged a violation of a contractual provision. The Complaint includes allegations that Plaintiff entered into a contract with Defendant where it provided electronic components to Defendant, that Plaintiff delivered said components to Defendant, and that Defendant has refused to pay Plaintiff the agreed-upon sum."); *nVision Glob. Tech. Sols., Inc. v. Cardinal Health 5, LLC*, No. 1:11-cv-0389-WSD, 2012 U.S. Dist.

LEXIS 202717, 2012 WL 13006063, at *4 (N.D. Ga. Jan. 10, 2012) (plaintiff sufficiently pled a breach of contract claim by alleging among other things that the defendant "had a duty under the terms of the contract to perform specific duties" and then did not complete them).

Here, Plaintiffs allege that they entered into a contract with Defendant pursuant to which Defendant agreed to provide them access to its fitness facilities in exchange for Plaintiffs' payment of their membership dues. Amd. Compl. at ¶52. Plaintiffs allege that they complied with their end of the bargain by paying their membership fees. *Id*. at ¶53. Plaintiffs further allege that Defendant breached its obligations under the contract "by charging Plaintiffs and the Class Members fees during a period in which Defendants did not provide access to its fitness facilities." *Id*. at ¶54. Thus, "[g]iven the simplicity of the claim and the facts alleged, the breach of contract claims put Defendant on notice as to the substance of Plaintiffs' claims." *Roman*, 2019 U.S. Dist. LEXIS 182638, at *9.

Undeterred, Defendant goes on to misconstrue the terms of its own agreement. According to Defendant, the contract at issue absolves it of any liability for the wrongfully collected fees at issue. Specifically, Defendant cites two portions of the Membership Agreement. The first provides: "No refunds shall be made for Membership dues paid, except as specifically provided in this Agreement." Mot. at pg. 11. However, Defendant fails to advise this Court that the sentence immediately preceding the clause it cites in a vacuum states: "If any payment of dues or other charges is not made on time, L.A. Fitness may, but is not obligated to, suspend or terminate your Membership." Ex. 1 to Mot. at pg. 2. In other words, the "no refund" clause cited by Defendant would be applicable in the event of a breach by Plaintiffs, not Defendant. Meaning that if Plaintiffs were to have breached the contract, they would not be entitled to a refund.

Moreover, Defendant cites the following remedies limiting provision found in the Membership Agreements to support its contention that it is not liable to Plaintiffs and the class members: the "sole and exclusive remedy in the event of any breach of this Agreement shall be cancellation of this Agreement." Mot. at pg. 11. Unfortunately for Defendant, this clause is unenforceable because the Membership Agreement "contains 'an unreasonable disparity in remedy alternatives available to' the parties." *Cadle Co. II v. Menchion*, No. 16-10380, 2020 U.S. App. LEXIS 11685, at *16 (11th Cir. Apr. 14, 2020) (quoting *Inlet Beach Capital Investments, LLC v. F.D.I.C.*, 778 F.3d 904, 906-07 (11th Cir. 2014) (quoting *Terraces of Boca Assocs. v. Gladstein*, 543 So. 2d 1303, 1304 (Fla. Dist. Ct. App. 1989))); *see also Barnes v. Diamond Aircraft Indus.*, 499 F. Supp. 2d 1311, 1318 (S.D. Fla. 2007)

("Florida courts have upheld such limitations of remedy provisions in contracts where the limitation is mutual, unequivocal, and reasonable.").

A review of the Membership Agreement demonstrates that it contains an unreasonable disparity in remedy alternatives. According to Defendant's interpretation of its Membership Agreement, if it were to breach the agreement, Plaintiffs' only recourse would be to cancel the agreement and nothing more. If Plaintiffs were to breach, Defendant would be entitled to (1) terminate the agreement;[1] (2) keep the last month's dues paid by Plaintiffs upon initiation, pursuant to the "no refunds" clause;[2] and (3) "In addition to the other dues, fees and charges provided for in this Agreement," Plaintiffs would be required "to pay a $10.00 service fee for any item or direct charge memo not paid by [their] financial institution or account when presented for payment by L.A. Fitness," Ex. 1 to Mot. at pg. 2. This is the very definition of disparity in alternative remedies. Under Defendant's interpretation of the Membership Agreement, it can do whatever it wants and Plaintiffs' only recourse is to cancel their membership. Plaintiffs on the other hand, would be subject to a number of fees and penalties if they do not comply with their obligations. If Defendant's "I will if I want to" interpretation of the Membership Agreements is adopted, then the entire agreement should be voided as illusory. *See Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010) ("A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor — who says, in effect, 'I will if I want to.'") (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc*. 162 F.3d 1290, 1311 (11th Cir. 1998)); *see also Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1333 (Fla. 3d DCA 1985) (recognizing that a contractual provision renders an obligation "illusory" when it allows a party "to breach with impunity").

Finding itself with no persuasive arguments or explanation for its breach of the Membership Agreements, Defendant asks this Court to answer a question of fact at the pleading stage. Specifically, Defendant cites a portion of the Membership Agreement which states that if a facility becomes "unavailable", Defendant has the option to extend memberships for that period of time. Mot. at pg. 12. First, as alleged by Plaintiffs, "Defendant's fitness facilities did not become unavailable. Rather, Defendant decided to voluntarily close its facilities without advance notice to Plaintiffs and the

---

[1] "If any payment of dues or other charges is not made on time, L.A. Fitness may, but is not obligated to, suspend or terminate your Membership." Ex. 1 to Mot. at pg. 2.

[2] As stated in the "Payment" section on the first page of the Membership Agreement, Plaintiffs were required to pay the first and last months' fees upon becoming members. Ex. 1 to Mot. at pg. 1.

Class Members." Amd. Compl. at ¶55. The word "unavailable" is defined as "not possible to get or use." https://www.merriam-webster.com/dictionary/unavailable; (last accessed Jun. 1, 2020). As alleged, it was possible to use Defendant's facilities and, thus, they were not unavailable. Further, whether something "has occurred which would constitute a breach of contract is a matter of fact to be determined by a jury." *Winter Garden Citrus Growers' Ass'n v. Willits*, 151 So. 509, 511 (1933); *see also Ron Matusalem & Matusa of Florida, Inc. v. Ron Matusalem, Inc.*, 872 F.2d 1547, 1551 (11th Cir. 1989) (whether a party's actions constitute breach of contract is question for trier of fact); *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1195 (M.D. Fla. 2008). Additionally, if this Court determines that there is any ambiguity with respect to the term "unavailable", then it should be construed against the drafter (Defendant). *See Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1248 (11th Cir. 2002); *Wistar v. Raymond James Fin. Servs.*, 365 F. Supp. 3d 1266 (S.D. Fla. 2018) ("Further, to the extent that there is any ambiguity as to whether Raymond James was allowed to charge a Processing Fee in excess of the actual costs associated with executing and clearing of a transaction, such ambiguity would be construed against Raymond James, as the drafting party.").

Given the above principles and Plaintiffs' allegations, Plaintiffs have sufficiently alleged a cause of action for breach of contract and Defendant's motion should be denied.

### C. Plaintiffs are Permitted to Allege Unjust Enrichment in the Alternative.

Defendant contends that Plaintiffs are not permitted to allege a claim for unjust enrichment because of the existence of an express contract. "Fortunately, the Eleventh Circuit has addressed the issue," and this Court has previously followed "the Eleventh Circuit's guidance" on the issue. *See Aero. Precision, Inc. v. NexGen Aero, Ltd. Liab. Co.*, No. 17-CV-61106-WPD, 2017 U.S. Dist. LEXIS 159888, at *16 (S.D. Fla. Sep. 27, 2017). Contrary to Defendant's contention, "the rule precluding equitable relief does not apply to unjust enrichment claims, which may proceed until 'an express contract is proven.'" *Id.* (quoting *State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.*, 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311, 563 Fed. Appx. 665); *Garcia v. Clarins USA, Inc.*, 2014 U.S. Dist. LEXIS 182426, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 4, 2014) (applying *State Farm* to deny motion to dismiss unjust enrichment claim despite allegation of express contract between the parties)). Additionally, pursuant to Federal Rule of Civil Procedure 8(d)(2), a plaintiff is permitted to plead in the alternative, and "it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails." *Aero. Precision, Inc.*, 2017 U.S. Dist. LEXIS 159888, at *16 (quoting *Martorella v.*

*Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013)); *see also Feldkamp v. Long Bay*, No. 2:09-cv-253-FtM-29SPC, 2010 U.S. Dist. LEXIS 95723, at *15 (M.D. Fla. Sep. 14, 2010) ("[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency" and "may plead alternative and inconsistent facts and remedies . . .") (quoting *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540-41 (11th Cir. 1986)).

"Therefore, dismissal of the unjust enrichment claim at this early stage would be unwarranted." *Aero. Precision, Inc.*, 2017 U.S. Dist. LEXIS 159888, at *16 (citing *Mancil's Tractor Serv., Inc. v. T&K Constr., LLC*, 2015 U.S. Dist. LEXIS 183793, 2015 WL 12866331, at *3 (S.D. Fla. July 28, 2015) (denying motion to dismiss unjust enrichment claim, because "while [counterclaim-plaintiff] may not be able to recover under both [breach of contract and unjust enrichment] theories, the Court need not make such a determination at this stage in the litigation.")); *see also Justice v. Rheem Mfg. Co.*, No. 14-80017-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 198959, at *16 (S.D. Fla. Dec. 11, 2014) ("The Court again finds that Plaintiffs have adequately alleged facts showing that they conferred profits on Defendant by purchasing Rheem ACs, that Defendant retains those profits, and that such retention is inequitable because the Rheem ACs contain defective Rheem Coils; and that it is unclear at this stage whether Plaintiffs may subsequently plead valid claims based on any applicable warranties. The Court will not dismiss Count VIII."); *Supercase Enter. Co. v. Marware, Inc.*, No. 14-61158-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 195225, at *16 (S.D. Fla. Nov. 21, 2014) ("Nevertheless, alternative pleading is permitted under the Rules, and dismissal may be premature pre-answer where it is unclear if the existence and enforceability of a contract will be at issue.") (citing *Liva v. Mendolia*, 2014 U.S. Dist. LEXIS 69670, 2014 WL 2118814, at *5 (S.D. Fla. May 21, 2014) (allowing plaintiff to proceed with unjust enrichment claim where "no answer to the Complaint has been filed yet [and] it is unclear at this stage whether existence and enforceability of the contract are at issue in this case.")).

Furthermore, as discussed above, if Defendant were permitted its interpretation of Plaintiffs' Membership Agreements – allowing it to unilaterally close its facilities and provide services whenever it feels like it – then the Membership Agreements would be rendered illusory and unenforceable. *See Feldkamp v. Long Bay Partners, Ltd. Liab. Co.*, 773 F. Supp. 2d 1273, 1283 (M.D. Fla. 2011) ("Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound…. If the Court were to read defendant's right to amend as broadly as suggested by defendant, defendant would have no obligations to plaintiffs") (quoting *Contractpoint Fla. Parks, LLC v. State of Florida*, 958 So. 2d 1035, 1036 (Fla. 1st DCA 2007)

(citing *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 (S.D. Fla. 1923), aff'd, 296 F. 693 (5th Cir. 1924))). Thus, Plaintiffs have properly alleged their unjust enrichment count in the alternative as this Court may ultimately rule that an enforceable contract does not exits between the parties.

    **D. Plaintiffs are Permitted to Allege Negligence in the Alternative, and Sufficiently Allege a Cause for Negligence**.

Defendant overlooks that, like unjust enrichment, Plaintiffs are permitted to allege their negligence claim in the alternative. *See Janssen v. Malin Haley DiMaggio Bowen & Lhota, P.A.*, 23 Fla. L. Weekly Fed. D293, at *15 (S.D. Fla. 2012) ("Lastly, the Court rejects Defendants' argument that Plaintiff fails to state a claim for breach of contract because the allegations for the negligence and breach of contract claim are identical. A plaintiff may plead alternative theories of relief.") (citing Fed. R. Civ. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically"); *Manicini Enterprises, Inc. v. American Exp. Co.*, 236 F.R.D. 695, 698-99 (S.D. Fla. 2006) (a plaintiff may plead inconsistent or alternative theories of relief)); *Ideal Frame Co. v. DecisionHR USA, Inc.*, No. 8:16-cv-1963-T-36MAP, 2017 U.S. Dist. LEXIS 118930, at *7 (M.D. Fla. Mar. 22, 2017) ("Here, Ideal Frame has pleaded its counts for breach of contract, negligence, and gross negligence as alternative counts. The Federal Rules of Civil Procedure permit it to do so."); *Old Republic Nat'l Title Ins. Co. v. First Am. Title Ins. Co.*, No. 8:15-cv-126-T-30EAJ, 2015 U.S. Dist. LEXIS 37747, at *8 (M.D. Fla. Mar. 25, 2015) ("Irrespective of the source of the duty, the negligence claim should not be dismissed because Old Republic has pleaded its counts in the alternative."). If, as discussed above, this Court finds that the Membership Agreements are illusory and unenforceable, then the nature of Plaintiffs' claim would no longer be contractual and they would be permitted to pursue their negligence claim.

Notwithstanding, Plaintiffs have sufficiently pleaded a duty owed to them by Defendant outside of the Membership Agreements. Specifically, Plaintiffs allege that Defendant wrongfully collected the fees at issue using "automatic electronic debits" from Plaintiffs and the class members bank accounts. Amd. Compl. at ¶¶4, 56, 84. Plaintiffs further allege that Defendant solely controlled these automatic debits that Plaintiffs and the class members were helpless to stop. *Id*. These allegations establish the existence of a fiduciary duty between Plaintiffs and the class members on the one hand, and Defendant on the other. Fiduciary relations and related duties are broadly interpreted, and arise in a variety of circumstances:

> Courts of equity have carefully refrained from defining instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal. The rule as thus stated has been repeatedly quoted with approval by this court. It has been said that it exists, and that relief is granted, in which influence has been acquired and abused-in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one [person] trusts in and relies upon another. The only question is, Does such a relation in fact exist?

*Estate of Ayres v. Beaver*, 48 F. Supp. 2d 1335, 1341 (M.D. Fla. 1999) (quoting *Swerhun v. General Motors Corp.*, 812 F. Supp. 1218, 1222-23 (M.D. Fla. 1993); citing *Browning v. Peyton*, 918 F.2d 1516, 1522 (11th Cir. 1990); *Garner v. Pearson*, 545 F. Supp. 549, 557 (M.D. Fla. 1982)(quoting *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419 (1927)); see also *Helinautica Inter., S.A. v. Engage Aviation, LLC*, No. 8:11-CV-676-T-17TGW, 2011 U.S. Dist. LEXIS 131686, 2011 WL 5553896, at *2 (M.D. Fla. Nov. 15, 2011) ("a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other.") (quoting *The Florida Bar v. Adorno*, 60 So. 3d 1016, 1028 (Fla. 2011)).  The existence of a fiduciary duty is a question of fact for the jury. *Estate of Ayres*, 48 F. Supp. 2d at 1341 (quoting *Morton v. Young*, 311 So. 2d 755, 756 (Fla. 3d DCA 1975); citing *Browning*, 918 F.2d at 1522; *Garner*, 545 F. Supp. at 557).

      Here, Plaintiffs gave Defendant access to their bank accounts and permitted Defendant to make automatic debits from their accounts.  This resulted in Defendant having a position of influence, confidence, and control, which it exercised and abused by making debits from Plaintiffs' accounts when it knew or should have known that it had no intent to provide services in exchange for the fees it was collecting.  Amd. Compl. at ¶¶ 69, 70. Defendant's breach of the duty it owed Plaintiffs when making debits from their bank accounts is sufficient to support Plaintiffs' negligence claim. *See Fla. Auto. Joint Underwriting Ass'n v. Milliman, Inc.*, No. 4:06-cv-00546-SPM-WCS, 2007 U.S. Dist. LEXIS 108225, at *9 (N.D. Fla. Feb. 15, 2007) ("Defendant's arguments are insufficient to dismiss….Plaintiff's theory of negligence in its Complaint is based off of its theory of fiduciary duty. Plaintiff's theory is that if

Defendant owed Plaintiff a fiduciary duty, it also owed the lower standard of care to not be negligent."). Thus, Plaintiffs' negligence count should be permitted to survive.

### E. Plaintiffs Sufficiently Allege a Cause for Negligent Misrepresentation.

Defendant contends that Plaintiffs have not alleged a cause for negligent misrepresentation because Plaintiffs fail to identify the misrepresentations allegedly made. Defendant, however, overlooks that Plaintiffs allege a cause for negligent misrepresentation by omission. A claim for negligent misrepresentation by omission may be maintained where "the party omitting the information owes a duty of disclosure to the party receiving the information." *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) (citing *TransPetrol Ltd. v. Radulovic*, 764 So. 2d 878, 880 (Fla. 4th DCA 2000)). "Such duty arises when one party has information that the other party has a right to know because of a Fiduciary or other relation of trust or confidence between them." *Behrman*, 388 F. Supp. 2d at 1351 (quoting *TransPetrol Ltd.*, 764 So. 2d at 880) (citing *State v. Mark Marks, P.A.,* 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995)); *Friedman v. Am. Guardian Warranty Servs.,* 837 So.2d 1165, 1167 (Fla. App. 4th DCA 2003))); *see also Koock v. Sugar & Felsenthal LLP*, No. 8:09-CV-609-T-17EAJ, 2010 U.S. Dist. LEXIS 38004, at *12 (M.D. Fla. Mar. 25, 2010) ("The Amended Complaint is a class action complaint for negligence and for negligent misrepresentation by omission….The Amended Complaint states that Defendant S&F owed a duty to the investing public, including Koock and the class, to ensure that full and fair disclosures were made on offering documents drafted by Defendant S&F, that Defendant S&F breached that duty owed to Plaintiffs, that Defendant S&F's negligence proximately caused damage to the Koocks and the class.").

As discussed above, the operative pleading establishes a fiduciary relationship stemming from Defendant's availability to access Plaintiffs' bank accounts and unilaterally withdraw funds from those accounts. Defendant breached its duties by withdrawing funds from those accounts when it knew that it would not be providing any services in exchange for the fees it was collecting. As alleged in the First Amended Complaint, Defendant had a duty to disclose the availability of its fitness facilities, and breached that duty "by failing to advise Plaintiffs and Class Members that it would be voluntarily closing its facilities before closing them, and before collecting fees from Plaintiffs and the Class Members." Amd. Compl. at ¶76. Given the position of power it held, Defendant was obligated to advise Plaintiffs and the class members that it had no intention of providing them services before it collected fees from their bank accounts. For this reason, Defendant's reliance on the independent tort rule is misplaced, as Plaintiffs have demonstrated breach of a duty independent of a breach of

the Membership Agreements. *See Lamm v. State Street Bank and Trust*, 749 F.3d 938, 947 (11th Cir. 2014) ("the standard appears to be that where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence."); *United States Fire Ins. Co. v. ADT Sec. Servs.*, 134 So. 3d 477, 480 (Fla. 2d DCA 2013) ("it appears to be one alleging negligent misrepresentation, which is independent of any breach of contract.") (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1997) (recognizing that intentional or negligent acts which are independent of the contract can give rise to a tort action; in that case, it was fraudulent inducement). Defendant was negligent through its omission, independent of its breach of the Membership Agreements, and its motion to dismiss this count should be denied.

### F. Plaintiffs Sufficiently Allege Breach of the Implied Covenant of Good Faith and Fair Dealing.

Preliminarily, Defendant's contention – that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs do not identify the express contractual provision Defendant breached – is meritless for the reasons previously outlined. As discussed above, "[g]iven the simplicity of the claim and the facts alleged, the breach of contract claims put Defendant on notice as to the substance of Plaintiffs' claims." *Roman*, 2019 U.S. Dist. LEXIS 182638, at *9. Similarly meritless is Defendant's claim that it did not breach the implied covenant of good faith and fair dealing because it "had the contractual right to engage in the actions alleged in the Amended Complaint." Mot. at pg. 18. That argument ignores both the terms of the Membership Agreements and the allegations in the Amended Complaint. As previously discussed, Defendant's contractual right to extend memberships arises only when Defendant's facilities become "unavailable". As alleged in the operative pleading, "Defendant's fitness facilities did not become unavailable. Rather, Defendant decided to voluntarily close its facilities without advance notice to Plaintiffs and the Class Members." Amd. Compl. at ¶55. Thus, Defendant did not have the contractual right to collect membership dues when it had no intention of providing services in return, and any dispute regarding that right should be decided by a jury.

Additionally, Plaintiffs' allegations regarding Defendant's breach of the implied covenant of good faith and fair dealing are not repetitive. As held by this Court, "[w]here . . . a contract gives a party substantial discretion to promote its self-interest, the implied covenant of good faith serves as a gap-filling default rule" and "[i]n filling the gaps, the implied covenant of good faith limits that party's ability to exercise its discretion capriciously to contravene the reasonable contractual expectations of the other

party." *Al-Ghena Int'l Corp.*, 2014 U.S. Dist. LEXIS 199129, at *23 (quoting *Mahdavieh v. Suntrust Mortg., Inc.*, No. 13-62801-CIV, 2014 U.S. Dist. LEXIS 47775, 2014 WL 1365425, at *4 (S.D Fla. Apr. 7, 2014)). "[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Persaud v. Bank of Am., N.A.*, No. 14-21819-CIV, 2014 U.S. Dist. LEXIS 120307 (S.D. Fla. Aug. 27, 2014) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999)).

Where, as here, a defendant is alleged to have "contravened Plaintiffs' contractual expectations" through "discretionary conduct," a court should disregard the defendant's self-serving characterization of its conduct and rely on the plaintiff's allegations. *See Al-Ghena Int'l Corp.*, 2014 U.S. Dist. LEXIS 199129 at *23; *see also Mahdavieh v. Suntrust Mortg., Inc.*, No. 13-62801-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 47775, at *13 (S.D. Fla. Apr. 7, 2014) ("Here, Plaintiffs claim that STM exercised its discretion in bad faith by force-placing unnecessary and excessive-priced insurance on Plaintiffs' property in return for unearned kickbacks. As noted above, although the mortgage gave STM substantial discretion to force-place insurance, that discretion was not absolute….Viewing Plaintiffs' allegations in the light most favorable to them, the Court finds that Plaintiffs have sufficiently alleged that STM acted capriciously to contravene their reasonable contractual expectations.").

Plaintiffs allege and have demonstrated that the Membership Agreements, combined with Defendant's ability to automatically withdraw Plaintiffs' bank accounts, gave Defendant substantial discretion to promote its self-interest. Plaintiffs further allege that Defendant acted capriciously to contravened the reasonable contractual expectations of Plaintiffs and the class members by collecting "fees from Plaintiffs and the Class Members when it knew or should have known that it intended to voluntarily close all of its facilities." Amd. Compl. at ¶86. Defendant's conduct "unfairly frustrated the agreed common purpose and…expectations of Plaintiffs and the Class Members," under the terms of the Membership Agreements. If there is any question, the sample consumer complaints quoted in the First Amended Complaint further support Plaintiffs' allegations that Defendant frustrated the expectation of its members. *See* Amd. Compl. at ¶38. Defendant's request to dismiss this count of the First Amended Complaint should therefore be denied.

## V.   CONCLUSION

Defendant fails to advance a single persuasive reason to dismiss any of Plaintiffs' well-pled claims. Defendant's Motion to Dismiss should therefore be denied.

**WHEREFORE**, Plaintiffs Kip Barnett and Samuel Enzinna respectfully request an order denying Defendant's Motion to Dismiss.

Date:  June 2, 2020

Respectfully submitted,

**HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
(t) 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
Email: jibrael@jibraellaw.com
Telephone: 954-628-5793

*Counsel for Plaintiff and the Class*