UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60658-CIV-DIMITROULEAS

KIP BARNETT and SAMUEL ENZINNA,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

vs.

FITNESS INTERNATIONAL, LLC,
d/b/a LA FITNESS,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendant Fitness International d/b/a LA Fitness ("Defendant" or "Fitness")'s Motion to Dismiss First Amended Complaint [DE 18] (the "Motion"), filed herein on May 20, 2020. The Court has carefully considered the Motion, the Response [DE 19], the Reply [DE 20], and is otherwise fully advised in the premises.

On August 25, 2020, the Court entered an Omnibus Order Adopting and Approving Report and Recommendation of Magistrate Judge; Granting Defendant's Motion to Compel Arbitration and Stay Action; Denying as Moot Defendant's Motion to Dismiss First Amended Complaint as to the Claims of Plaintiff Kip Barnett. *See* [DE 26].  Therein, the Court dismissed the case without prejudice as to the claims of Plaintiff Kip Barnett, having determined that he must be compelled to arbitrate his claims against Defendant. *See* [DE's 25, 26].

1

The Court now addresses the Motion [DE 18] with regard to the claims of Plaintiff Samuel Enzinna ("Enzinna"), who is the only remaining Plaintiff in this action. For the reasons explained below, the Court will dismiss Enzinna's claims under Rule 12(b)(1) for lack of Article III standing.

## I. BACKGROUND

On March 16, 2020, Fitness announced that it was temporarily closing its facilities to help reduce the spread of the COVID-19 virus. *See* [DE 12] ("First Amended Class Action Complaint") at ¶ 3. On March 20, 2020, Fitness notified its members by email that it was suspending all billing starting April 1, 2020, and offered to extend their membership terms for a month longer than the period of time that the facility had been closed, or a three-month membership to give a friend or family member. ¶¶ 7, 30, 33. The offer required the member to click a hyperlink in the email to Defendant's website where members are supposed to select one of the two options. ¶ 8. Neither Kip Barnett or Samuel Enzinna accepted this offer. ¶ 35.

On March 30, 2020, two weeks after Fitness made its announcement, Plaintiff, Kip Barnett ("Barnett"), a member of one of Fitness's health clubs in Florida, filed a putative class action complaint against Fitness for Unjust Enrichment and Negligence, alleging that Fitness instead should have given him a pro-rated refund of his March payment. *See* [DE 1] ("Class Action Complaint"). On April 21, 2020, Fitness moved to compel arbitration of Barnett's claims pursuant to "his signed, written agreement to submit the parties' dispute to an arbitrator, not a court." *See* [DE 9]. The following day, on April 22, 2020, counsel notified Defendant that Samuel Enzinna intended to file claims in this lawsuit, and demanded confirmation of whether Defendant intended to enforce any arbitration provision that might exist. *See* [DE 12] at ¶ 9. On April 27, 2020,

Defendant's counsel responded that they had not located an arbitration agreement with Enzinna, but that they had "interpreted your email, however, as a request by Mr. Enzinna for a refund and are glad to inform you that the March 2020 dues paid by Mr. Enzinna have been fully refunded…." *Id.* at ¶ 12. Fitness notified Enzinna through his counsel of the refund without any conditions and explained that Fitness has refunded "the dues of many other members in good standing who have made such a request instead of choosing the other benefits offered to them." *See* [DE 18-2].

On April 29, 2020, two days after Enzinna's March 2020 dues were refunded in full by Fitness, an Amended Complaint was filed, naming Samuel Enzinna as a Plaintiff for the first time, in addition to Plaintiff Kip Barnett. *See* [DE 12]. Despite acknowledging that Enzinna's March 2020 membership fees were refunded pre-suit, the Amended Complaint alleges as the basis of the suit that Fitness refuses to refund the March 2020 membership fees. *See* [DE 12] at ¶¶ 10, 11, 14.

On May 20, 2020, Fitness filed a Motion to Dismiss First Amended Complaint, arguing that the Court should compel arbitration as to Plaintiff Barnett, dismiss Plaintiff Enzinna's claims under Rule 12(b)(1) for lack of standing because his alleged injury was fully redressed by Fitness's unconditional refund of his monthly payment before he joined this lawsuit, and should otherwise dismiss both Enzinna and Barnett's claims in their entirety because the Amended Complaint fails to state a plausible claim for relief. *See* [DE 18]. Fitness' Motion was granted as to Plaintiff Barnett. *See* [DE 26]. The Court dismissed the case without prejudice as to the claims of Plaintiff Barnett, having determined that he must be compelled to arbitrate his claims against Defendant. *See id.* The Court now turns to Fitness' argument that the only remaining Plaintiff—Enzinna—lacks standing to pursue this lawsuit.

## II. STANDARD OF REVIEW

Challenges to a party's standing are properly raised under Rule 12(b)(1). *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1369, at n. 5 (M.D. Ga. 2005). A Rule 12(b)(1) motion may be in the form of a "facial attack" on the complaint, which "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). Or, the motion may take the form of a "factual attack," which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. Because a factual Rule 12(b)(1) motion challenges the trial court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The court is not limited to the allegations contained in the complaint, and it may consider materials outside the pleadings to determine whether it has jurisdiction. *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims." *Id.*

Here, the Court relies strictly on information contained in the Amended Complaint [DE 12] and the April 27, 2020 email incorporated by reference [DE 18-2] [1], so the Defendant raises a "facial attack" under Rule 12(b)(1).

---

[1] The Court agrees with Defendant that it may consider this email because Plaintiffs quote its content in the First Amended Complaint, *see* [DE 12] at ¶ 10, and therefore incorporate it into the First Amended Complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting "a document need not be

4

## III. DISCUSSION

Article III standing is a jurisdictional question. *See JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) ("Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction."). "To have standing, a plaintiff must show that he suffered an injury, that there is a sufficient causal connection between the injury and the conduct complained of, and that there is a likelihood that the injury will be redressed by a favorable legal decision." *Id.* at 1264. The "irreducible constitutional minimum" of standing under Article III consists of three elements: (1) the plaintiff must have suffered an actual or imminent injury, or a concrete "invasion of a legally protected interest"; (2) that injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The actual or imminent injury component requires a showing of "a harm that is both concrete and actual or imminent, not conjectural or hypothetical." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).

Where a plaintiff does not have an actual, concrete, particularized injury-in-fact at the time of filing the complaint, he cannot sufficiently allege that he suffered a loss, and does not have standing to sue. In *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 WL 1272687 (S.D. Fla. Mar. 9, 2018), *appeal dismissed*, No. 18-11730, 2018 WL 3642084 (11th Cir. July 17, 2018) the district court dismissed a class action complaint for lack of subject matter jurisdiction

---

physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document").

class complaint based on named plaintiff's lack of Article III standing, explaining that plaintiff failed to sufficiently allege an actual injury that was not moot at the time of filing suit:

> Hardy has alleged: (1) she purchased pillowcases that were represented to contain 100 percent pima cotton; (2) the pillowcases contained only 2 percent pima cotton; and (3) she suffered damages as a result of this misrepresentation. Specifically, Hardy contends she did not receive the premium product she thought she was purchasing but instead received something of inferior quality and therefore did not obtain the benefit of her bargain. Had Hardy's complaint stopped here, her allegations would likely suffice to allege an injury in fact sufficient to satisfy the third element required to establish standing. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1353 (S.D. Fla. 2012) (Cohn, J.) (*citing Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 990–91 (E.D. Cal. 2012)) (finding Article III standing where plaintiff alleged she relied on representations on packaging of product and that she lost money on the ineffective product).
>
> However, Hardy attached to her complaint the billing documentation associated with her purchase. (Compl. Ex. 3, ECF No. 14-3.) Part of this paperwork includes BB&B's return instructions which states BB&B "gladly accept[s] returns or exchanges at any of [its] stores or by mail." (Id. at 3.) There are no restrictions stated in the instructions for returns, but BB&B asks customers to indicate why they are returning the item. (Id.) Among the possible reasons a customer can choose from is that the "[i]tem is not as described/pictured." (Id. (additionally, a customer can also choose "Other" in the event that the reason for the return doesn't fit any other of the specified categories).) The only injury Hardy claims to have actually suffered is the outlay of funds for a product she did not actually receive: as she sets forth in her response to BB&B's motion, her damages are the result of her having "part[ed] with money to purchase a misbranded product." (Pl.'s Resp., ECF No. 22, 7.) But BB&B, according to the very exhibit Hardy herself attached to her complaint, made a pre-litigation refund offer for complete relief for the only damages Hardy alleges.
>
> "[T]he clear intent of [FDUPTA] as expressed by its plain language is to provide both equitable and legal remedies to private consumers who are aggrieved parties and/or sustained actual losses because of [ ] violations(s) under FDUPTA." *Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371, 1373 (S.D. Fla. 2003) (Seitz, J.) (quoting *Macias v. HBC of Fla., Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997)) (emphasis added). Because, according to her complaint, Hardy could have received a full refund, the only injury she actually alleges was essentially mooted. *See Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) (finding plaintiff's injury mooted by the company's refund offer); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137 (D. Minn. 2016) (noting cases that stand for the general proposition: "when a defendant offers a plaintiff a full refund for all of its alleged loss prior to the commencement of litigation, this

6

>   refund offer deprives the plaintiff of Article III standing because the plaintiff cannot establish an injury in fact").

*Id.* at *1-2.

In *Luman v. Theismann*, 647 F. App'x 804, 806-07 (9th Cir. 2016), the Ninth Circuit affirmed the district court's dismissal where a putative class representative had received full refund to his credit card account prior to filing lawsuit because he "no longer met the injury-in-fact requirement at the time he filed his complaint" and "never had standing to pursue monetary relief in the first place." In contrast to the named plaintiff Luman, who did not have standing when he filed suit after the defendant had refunded his money to his credit card, the named plaintiff Amkraut did not receive a refund until after he joined the lawsuit, and therefore he had standing pursuant to the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). *See id.* The Ninth Circuit explained this distinction between the two named plaintiff's standing determinations as follows.

>   The district court did not err in dismissing Luman's individual claim for monetary relief. Luman filed his complaint two months after he received a monetary refund from NAC, and therefore no longer met the injury-in-fact requirement for standing at the time he filed his complaint. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (noting that at the commencement of the litigation plaintiff must satisfy the elements of standing including an injury-in-fact, traceable to the defendant's behavior, that is redressable by the court); *O'Shea v. Littleton*, 414 U.S. 488, 494–96 (1974) (holding that past exposure to illegal conduct does not establish standing such that a purported named plaintiff may seek relief on behalf of himself or the class); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a class action ... adds nothing to the question of standing...."). Though the district court dismissed Luman's claims as moot, Luman never had standing to pursue monetary relief in the first place. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC ), Inc.*, 528 U.S. 167, 189 (2000) (" 'The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' ") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)).

7

> In contrast to Luman's claim, Amkraut's individual claim for monetary relief was unpaid when he joined the lawsuit. Amkraut therefore satisfied the injury-in-fact requirement and had standing to sue. *See Davis*, 554 U.S. at 732–33. The remaining question is whether the district court erred in holding that Amkraut's claim became moot when NAC issued him a refund. Subsequent to the district court's decision, the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell–Ewald Co. v. Gomez*, (2016). Under basic contract principles, a settlement offer or offer of judgment, once rejected, has no continuing efficacy. *Id.* at 670. Because of this change in law, we vacate the portion of the district court's decision dismissing Amkraut's individual claim as moot and remand for the district court to reconsider in light of *Campbell–Ewald*.

*Id.*

Here, the only injury Enzinna alleges he personally suffered is Fitness's failure to refund his March 2020 membership fees of $37.44. *See* [DE 12] at ¶ 26, 57, 72. But Enzinna acknowledges that the March 2020 fees paid by Mr. Enzinna were fully and unconditionally refunded back to his bank account before he joined this lawsuit. *See* [DE 12] at ¶ 10; [DE 18-2]. *Id*. ¶ 10. Enzinna's attempt to characterize the direct refund of his March 2020 membership fees as a rejected settlement offer or an unaccepted offer of judgment under *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and its progeny is unavailing. Here, Enzinna's claimed injury itself is Fitness' alleged failure to refund his March 2020 membership fees, which he alleges were refunded to his bank account before he filed a claim. As such, Enzinna lacks Article III standing because his alleged injury – the failure to refund his March 2020 membership fees, was fully redressed by Fitness' unconditional, direct refund of his March 2020 membership fees on April 27, 2020, prior to Enzinna's filing suit on April 29, 2020. Further, any request for injunctive relief in the form of a guarantee that Fitness will not charge membership fees when it closes its facilities in a pandemic is unduly conjectural and hypothetical, particularly in light of the Amended Complaint's allegation that Fitness suspended all billing starting April 1, 2020 following the March 16, 2020 closure of its facilities. Accordingly, Enzinna did not have an

actual, particularized, concrete injury that was not moot before he joined the lawsuit and lacks Article III standing to sue. *See Hardy*, 2018 WL 1272687 at *1-2; *Luman*, 647 F. App'x at 806-07.

Finally, that this case was filed as a putative class action does not change the Court's determination that Enzinna did not have standing to file suit. "That a suit may be a class action . . .adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (citation omitted). Thus, in a class action, "[i]ndividual standing requirements must be met by anyone attempting to represent [his] own interest or those of a class." *JW*, 904 F.3d at 1265.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. The Motion to Dismiss [DE 18] is **GRANTED**;

2. This case is **DISMISSED without prejudice** on the grounds that Plaintiff Enzinna, the only named Plaintiff, lacks Article III standing to bring this action;

3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as moot.

**DONE and ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 17th day of September, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of record